UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WIRED INFORMATICS, LLC,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff and Defendant-in-　*
　　　　Counterclaim,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　　　　*　　　Civil Action No. 19-cv-10019-ADB
　　　　　　　　　　　　　　　　　*
OMNIMD INC.,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendant and Plaintiff-in-　*
　　　　Counterclaim.　　　　　　　*

**MEMORANDUM AND ORDER ON MOTION TO DISMISS COUNTERCLAIMS**

BURROUGHS, D.J.

Plaintiff Wired Informatics, LLC ("Wired"), a software developer, filed this action

against its former client, Defendant OmniMD Inc. ("OmniMD"), alleging breach of contract,

breach of the implied covenant of good faith and fair dealing, and unfair and deceptive business

practices in violation of Massachusetts General Laws ch. 93A, § 11.  [ECF No. 1-1 at 6–9].

OmniMD brought counterclaims against Wired for fraud, breach of the implied warranties of

fitness and merchantability, and breach of contract.  [ECF No. 4 ("Counterclaim Complaint" or

"Counterclaim Compl.") ¶¶ 23–36].  Currently pending before the Court is Wired's motion to

dismiss the Counterclaim Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [ECF

No. 6].  For the reasons set forth below, Wired's motion to dismiss [ECF No. 6] is <u>GRANTED</u>,

and OmniMD may file an amended counterclaim complaint consistent with this Order.

**I.　　BACKGROUND**

The following facts are drawn from the Counterclaim Complaint, the well-pleaded

allegations of which are taken are true for purposes of evaluating Wired's motion to dismiss.

See <u>Ruivo v. Wells Fargo Bank</u>, 766 F.3d 87, 90 (1st Cir. 2014).

On September 17, 2017, Wired and OmniMD entered into a Master Software License and Services Agreement ("MSL"). [Counterclaim Compl. ¶ 4]. The MSL granted OmniMD licenses to use Wired products as specified in one or more ordering documents, which would amend or supplement the MSL. [Id. ¶¶ 5, 7]. The licenses would either be "Development" licenses, which would allow the use of Wired products in a development or testing environment, or "Production" licenses for using Wired products in a commercial or production environment. [Id. ¶ 6]. The MSL also provided for technical support to accompany licenses of Wired's products. [Id. ¶ 8].

On March 22, 2018, OmniMD ordered two Development licenses for a term of nine months for a product called "Invenio." [Id. ¶ 9]. OmniMD intended to use Invenio "as an artificial intelligence engine to read and parse natural language in medical transcripts, [to] select[] vital medical information from those transcripts[,] and [to] transfer[] that information to specific locations in standardized electronic health records . . ." for patients being treated by medical professionals using OmniMD's electronic health records software. [Id. ¶ 10]. Wired represented to OmniMD that Invenio was "ready to use," and the parties anticipated that the nine-month term would be used to "fine-tune[]," test, and adapt Invenio for OmniMD's expected usage. [Id.].

Also on March 22, 2018, OmniMD ordered nine Production licenses for Invenio for a twelve-month term to immediately follow the expiration of the term of the Development licenses. [Id. ¶ 11]. Before OmniMD placed its order for the Development and Production licenses, Wired had represented to it that "the nine-month term of the Development licenses would be a sufficient period of time for the Invenio artificial intelligence engine to adapt" to the integration with OmniMD's electronic health records software. [Id. ¶ 12].

Once it received the Development licenses, OmniMD tried unsuccessfully to integrate Invenio into its electronic health records software. [Id. ¶ 13]. During this time, Wired failed to provide sufficient technical support, despite OmniMD notifying Wired that Invenio was not fit for its intended purpose and was not merchantable. [Id. ¶¶ 16, 18–19]. After the nine-month term ended and OmniMD had spent more than $17,500 in license fees, Invenio was "barely working for only a small portion of functions" that Wired had represented it could perform. [Id. ¶ 10]. OmniMD determined that Invenio would need several more years of work before it would be usable and that it could not be incorporated into OmniMD's electronic health records software at that time. [Id. ¶¶ 10, 20]. OmniMD informed Wired that it was terminating the March 22, 2018 order as well as the MSL. [Id. ¶¶ 20–21]. As a result of the time spent by OmniMD on unsuccessfully adapting Invenio for use with its electronic health records software, OmniMD was delayed in getting its own product to market. [Id. ¶ 22].

On November 19, 2018, Wired filed a complaint in Suffolk County Superior Court. [ECF No. 1-1 at 3–9]. OmniMD removed the action to this Court on January 3, 2019 and thereafter filed an answer, affirmative defenses, and counterclaims on January 25, 2019. [ECF Nos. 1, 4]. On February 14, 2019, Wired file a motion to dismiss the counterclaims, which OmniMD opposed on March 11, 2019. [ECF Nos. 6, 10].

## II.     LEGAL STANDARD

On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim. See United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not

required, a counterclaim complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

When assessing the sufficiency of a counterclaim complaint, the Court first "separate[s] the [pleading's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the [defendant-in-counterclaim] is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

### A. Count I: Fraud

Count I alleges that OmniMD relied to its detriment on Wired's "false and misleading statements regarding the quality, functionality, and readiness for incorporation into OmniMD's electronic health records management software." [Counterclaim Compl. ¶ 24]. Wired seeks to have Count I dismissed on the ground that it was not pled with the particularity required by Federal Rule of Civil Procedure 9(b). [ECF No. 7 at 3–4]. In response, OmniMD directs the

Court to ¶¶ 9–12 of the Counterclaim Complaint, which contain the following allegations: (i) "Wired had represented that [Invenio] was ready to use;" (ii) "[Invenio] was barely working for only a small portion of functions that Wired had represented [it] would be able to perform;" (iii) the parties contemplated that the nine-month period of the Development license would be used to "fine-tune[]" Invenio and "fully test[] and correctly adapt[]" it to OmniMD's intended use; and, (iv) "Wired represented to OmniMD . . . that the nine-month term of the Development licenses would be a sufficient period of time" for Invenio to adapt to Omni's intended use. [Counterclaim Compl. ¶¶ 9–12]; see [ECF No. 10 at 6].

Rule 9(b) provides for a heightened pleading standard in fraud cases and requires that a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). This standard requires that a party bringing a fraud claim "must state 'the who, what, where, and when of the allegedly [misleading] representation' with particularity." Ezell v. Lexington Ins., 926 F.3d 48, 51 (1st Cir. 2019) (quoting Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016)). Here, the limited factual allegations contained in the Counterclaim Complaint and described supra fall short of what is required by Rule 9(b). These allegations do not describe with particularity the allegedly misleading representations by Wired and do not identify the "who, what, where, and when" of the misrepresentations. For example, the specific statements that are alleged to have been misleading are not described in any detail nor are the circumstances in which those statements were made. Although the fraud claim cannot stand as pled, the allegation of fraud is not implausible, and the Court will grant leave to amend the pleading. See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009) (observing that where a court finds a deficiency under Rule 9(b), "leave to amend is often given, at least for plausible claims").

## B.  Counts II & III: Breach of Implied Warranty of Fitness and Breach of Implied Warranty of Merchantability

Counts II and III assert that Wired's Invenio product "was not fit for the purpose intended or promised." [Counterclaim Compl. ¶¶ 28, 31].  The parties dispute whether the MSL is governed by the Uniform Commercial Code ("U.C.C.") or common law.[1]  See [ECF No. 7 at 5; ECF No. 10 at 7].  OmniMD contends that the determination of what law governs the MSL is a question of fact that precludes any resolution of these claims on a motion to dismiss.  [ECF No. 10 at 7–8].[2]  Wired maintains that, under either theory, OmniMD's claims must fail because any implied warranties were waived by the MSL.  [ECF No. 7 at 4–6].  The Court agrees.

The U.C.C., as adopted in New York,[3] implies a warranty of fitness and merchantability into contracts for the sale of goods.  See N.Y. U.C.C. Law §§ 2-314, 2-315.  U.C.C. § 2-315 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose."  N.Y. U.C.C. Law § 2-315.  Similarly,

---

[1] The Court finds it unnecessary at this time to adjudicate the question of whether the MSL is a contract predominantly for the sale of goods or services but observes that "[g]enerally software is considered a 'good.'"  See Architectronics, Inc. v. Control Sys., Inc., 935 F. Supp. 425, 432 (S.D.N.Y. 1996); Schroders, Inc. v. Hogan Sys., Inc., 522 N.Y.S.2d 404, 406 (Sup. Ct. 1987) ("[A]lthough the parties' agreement . . . did not involve a sale of computer hardware, but simply a licensure of software, the arrangement should nevertheless be construed to fall within the provisions of U.C.C. Article 2.").

[2] OmniMD further asserts that "Wired nevertheless expressly made . . . warranties by words and conduct." [ECF No. 10 at 8].  This argument is outside the scope of the Counterclaim Complaint, which does not plead a cause of action for breach of an express warranty.  See [Counterclaim Compl. ¶¶ 27–32].

[3] The MSL contains a valid choice of law provision that designates New York law for disputes arising out of the contract.  See [ECF No. 4-1 at 19 ("The construction, interpretation and performance of [the MSL] shall be governed by and construed in accordance with the laws of the State of New York . . . .")].

U.C.C. § 2-314 states that "[u]nless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. Law § 2-314.

These provisions may be disclaimed, however, and U.C.C. §§ 1-201(b)(10) and 2-316 provide the parameters of valid disclaimers. See N.Y. U.C.C. Law §§ 1-201(b)(10), 2-316. Section 2-316 of the U.C.C. permits a contracting party to exclude the implied warranty of merchantability from a written contract so long as the language "mention[s] merchantability" and is "conspicuous." N.Y. U.C.C. Law § 2-316. The implied warranty of fitness also may be excluded from a written contract if "the exclusion [is] by a writing and conspicuous." Id. The U.C.C. defines "conspicuous" as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it" and notes that "[w]hether a term is 'conspicuous' or not is a decision for the court." N.Y. U.C.C. Law §§ 1-201(b)(10); cf. Commc'ns Grps., Inc. v. Warner Commc'ns, Inc., 527 N.Y.S.2d 341, 346 (Civ. Ct. 1988) (explaining that the words "merchantability," "fitness," "disclaimer," "as is," "warranty," "all faults," or "other commonly understood language must be set forth in the contract, specifically and conspicuously, to call attention to the exclusion of warranties and make plain that there is no implied warranty in order to validate the exclusion of implied warranties"). "The question of whether a particular disclaimer is conspicuous, and hence valid, is a question of law to be determined by the court." Carbo Indus. Inc. v. Becker Chevrolet Inc., 491 N.Y.S.2d 786, 789 (App. Div. 1985).

Here, the warranty disclaimers in the MSL are valid and preclude any claim of a breach of an implied warranty. The MSL states in a section entitled "Limitations":

**EXCEPT AS EXPRESSLY STATED HEREIN, LICENSOR DOES NOT GUARANTEE THAT THE PROGRAMS WILL PERFORM ERROR-**

**FREE OR UNINTERRUPTED OR THAT LICENSOR CAN CORRECT EACH AND EVERY ERROR. THE WARRANTIES IN THIS SECTION 9 ARE GIVEN IN LIEU OF ALL OTHER WARRANTIES AND CONDITIONS. THERE ARE NO OTHER EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

[ECF No. 4-1 at 13]. This section expressly references the words "merchantability," "fitness," and "warranty." [Id.]. It specifically disclaims both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. [Id.]. The disclaimer is written in all capital letters and bolded, which clearly sets it apart from other portions of the MSL and supports a conclusion that the disclaimer is conspicuous or "so written, displayed, or presented that a reasonable person ought to have noticed it." See N.Y. U.C.C. LAW § 1-201(b)(10); [ECF No. 4-1 at 13]; see also Victor v. Mammana, 422 N.Y.S.2d 350, 351 (Sup. Ct. 1979) ("Capital letters, large print, contrasting type or color and black border are [U.C.C.] and court acknowledged methods of making a message conspicuous in a form . . . ."). Therefore, under the U.C.C., the warranty disclaimer contained in the MSL is valid and precludes any claim that an implied warranty was breached.

If the contract were deemed a contract predominantly for services rather than goods and the U.C.C. did not apply, OmniMD would not have a cause of action for breach of the implied warranties of merchantability or fitness because the same implied warranties do not apply to services contracts. See Word Mgmt. Corp. v. AT&T Info. Sys., Inc., 135 A.D.2d 317, 321 (App. Div., 1988); see also Milau Assoc. v. North Ave. Dev. Corp., 42 N.Y.2d 482, 485–86 (1977). Accordingly, because OmniMD is unable to sustain a claim for breach of implied warranties under any legal framework, the Court dismisses those claims without leave to replead.

C.     **Count IV: Breach of Contract**

Count IV alleges that Wired breached the MSL "because its Invenio product did not perform as represented." [Counterclaim Compl. ¶ 34]. OmniMD specifies in its briefing that its breach of contract counterclaim is based on the following allegations: (i) "Wired's product Invenio was defective;" (ii) "Wired represented that its product would work with OmniMD's applications;" (iii) "defects in Wired's product prevented that product from working as represented by Wired" despite OmniMD performing its obligations under the MSL; (iv) "Wired also failed to provide support to OmniMD." [ECF No. 10 at 10 (citing Counterclaim Compl. ¶¶ 10, 12, 14–16)]. Wired argues that Count IV should be dismissed because this allegation is conclusory and does not identify any contractual provision that was allegedly breached. [ECF No. 7 at 6].

As an initial matter, if the MSL is governed by the U.C.C., OmniMD cannot maintain a breach of contract action based on an allegedly defective product without first establishing that any "non-conformity" of the product "substantially impair[ed]" its value and that OmniMD effectively revoked its acceptance of the goods. See N.Y. U.C.C. Law § 2-608. With respect to non-conformity of the Invenio product, OmniMD would need to contend with the provision of the MSL that states that Wired "**DOES NOT GUARANTEE THAT THE PROGRAMS WILL PERFORM ERROR-FREE OR UNINTERRUPTED OR THAT [WIRED] CAN CORRECT EACH AND EVERY ERROR**." [ECF No. 4-1 at 13]. Regarding services provided in conjunction with the product, OmniMD would need to address the limited service warranty in the MSL, which provides that the warranty "is valid for a period of ninety days from performance of the applicable Services" and that "[OmniMD's] exclusive remedy and [Wired's] entire liability under these Services warranties shall be for [Wired] to re-perform any non-

conforming portion of the Services within a reasonable period of time . . . ."  [ECF No. 4-1 at

12–13].  Without these essential allegations concerning nonconformity of the goods under the

terms of the MSL, the claim fails.

If the MSL is instead a services contract governed by common law, to assert a breach of

contract counterclaim, OmniMD must allege "(1) the existence of a contract, (2) [its]

performance under the contract, (3) [Wired's] breach of the contract, and (4) resulting damages."

Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921 N.Y.S.2d 260, 264 (N.Y. App. Div.

2011).  "To plead these elements 'a plaintiff must identify what provisions of the contract were

breached as a result of the acts at issue.'"  Ellington Credit Fund, Ltd. v. Select Portfolio

Servicing, Inc., 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (quoting Wolff v. Rare Medium,

Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)); see also Ullman v. Med. Liab. Mut. Ins., 73

N.Y.S.3d 845, 847 (N.Y. App. Div. 2018); Reznick v. Bluegreen Resorts Mgmt., Inc., 62

N.Y.S.3d 460, 462 (N.Y. App. Div. 2017).  OmniMD's failure to identify what provisions of the

contract were breached is fatal to its claim.

Because under either legal theory, the defect alleged in Count IV may be remedied by an

amended pleading, the Court grants OmniMD leave to do so.

## IV.    CONCLUSION

Accordingly, Wired's motion to dismiss [ECF No. 6] is GRANTED.  OmniMD has leave

to file an amended counterclaim complaint consistent with this Order within 30 days.

**SO ORDERED.**

July 30, 2019                                                    /s/ Allison D. Burroughs
                                                                ALLISON D. BURROUGHS
                                                                U.S. DISTRICT JUDGE