UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WIRED INFORMATICS, LLC,                       * | |
|                * | |
|    Plaintiff and Defendant-in-  * | |
|    Counterclaim,                             * | |
|                * | |
|    v.                                                  * | Civil Action No. 19-cv-10019-ADB |
|                * | |
| OMNIMD INC.,                                          * | |
|                * | |
|    Defendant and Plaintiff-in-   * | |
|    Counterclaim.                             * | |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS AMENDED COUNTERCLAIM

BURROUGHS, D.J.

   Plaintiff Wired Informatics, LLC ("Wired"), a software developer, filed this action against its former client, Defendant OmniMD Inc. ("OmniMD"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive business practices in violation of Massachusetts General Laws ch. 93A, § 11. [ECF No. 1-1 at 6–9]. OmniMD brought counterclaims against Wired for fraud, breach of the implied warranties of fitness and merchantability, and breach of contract. [ECF No. 4 ("Counterclaim Complaint" or "Counterclaim Compl.") ¶¶ 23–36]. On July 30, 2019, the Court dismissed the Counterclaim Complaint but granted OmniMD leave to amend its counterclaims for fraud and for breach of contract. See [ECF No. 11 ("Motion to Dismiss Order") at 5, 10]. On August 30, 2019, OmniMD filed its amended counterclaims. [ECF No. 12 ("Amended Counterclaim Complaint" or "Am. Counterclaim Compl.")].

   Currently pending before the Court is Wired's motion to dismiss the Amended Counterclaim Complaint, which solely alleges a claim for breach of contract, pursuant to Federal

Rule of Civil Procedure 12(b)(6). [ECF No. 13]. For the reasons set forth below, Wired's motion to dismiss, [ECF No. 13], is GRANTED.

**I.     BACKGROUND**

The following facts are drawn from the Amended Counterclaim Complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating Wired's motion to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).

On September 17, 2017, Wired and OmniMD entered into a Master Software License and Services Agreement ("MSL"). [Am. Counterclaim Compl. ¶ 4]. The MSL granted OmniMD licenses to use Wired products as specified in supplemental orders. [Id. ¶ 5]. The licenses would either be "Development" licenses, which would allow the use of Wired products in a development or testing environment, or "Production" licenses for using Wired products in a commercial or production environment. [Id. ¶ 6]. The MSL also provided for technical support that would go with the licenses. [Id. ¶ 7].

On March 22, 2018, OmniMD ordered two Development licenses for a term of nine months for a product called "Invenio." [Am. Counterclaim Compl. ¶ 8]. Wired represented to OmniMD that Invenio was "ready to use." [Id. ¶ 9]. Invenio was to be "fine-tuned," "fully tested," and "correctly adapted" to OmniMD's intended use of the product in its electronic health management systems. [Id. ¶ 10]. That same day, OmniMD also ordered nine Production licenses for Invenio to follow the nine-month term of the Development licenses. [Id. ¶ 14]. Wired represented that "the nine-month term of the Development licenses would be a sufficient period of time for the Invenio artificial intelligence engine to adapt" to OmniMD's application. [Id. ¶ 15].

OmniMD diligently tried to integrate Invenio into its electronic health records software, including allocating substantial employee resources, but was unable to do so. [Am. Counterclaim Compl. ¶ 17]. Wired failed to provide sufficient technical support, despite OmniMD notifying Wired that Invenio was not functioning, was not fit for the purpose intended, and was not merchantable. [Id. ¶¶ 18, 20–21]. After the nine-month term ended and OmniMD had spent more than $17,500 in license fees, Invenio was still not working as represented and intended. [Id. ¶ 11]. OmniMD terminated the MSL as well as the March 22, 2018 order for the nine production licenses. [Id. ¶ 22]. Those production licenses were worthless to OmniMD because Invenio was not working with OmniMD's software. [Id. ¶ 23]. As a result of the time OmniMD spent trying unsuccessfully to adapt Invenio for use with its electronic health records software, OmniMD was delayed in getting its own product to market. [Id. ¶ 24].

## II.    DISCUSSION

### A.    Legal Standard

On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim. See United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, a counterclaim complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). The facts alleged must be sufficient to "state a claim to relief that is plausible on its

3

face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

### B.     Motion to Dismiss Order

The Court's Motion to Dismiss Order addressed but did not decide the issue of whether the contract at issue in this case, the MSL, was a contract for the sale of goods or services. See [ECF No. 11 at 6–8]. The Court stated in a footnote that it "[found] it unnecessary at this time to adjudicate the question of whether the MSL is a contract predominantly for the sale of goods or services but observe[d] that 'generally software is considered a good.'" [Id. at 6 n.1 (alterations omitted) (quoting Architectronics, Inc. v. Control Sys., Inc., 935 F. Supp. 425, 432 (S.D.N.Y. 1996))].

In its analysis of the breach of contract claim, the Court addressed the claim in the context of both a goods contract and a services contract. See [ECF No. 11 at 9–10]. The Court first explained that, if the MSL was a contract for goods governed by the Uniform Commercial Code ("U.C.C."), a breach of contract action based on an allegedly defective product requires a plaintiff to first establish that any "non-conformity" of the good "substantially impair[ed]" its value and that plaintiff effectively revoked its acceptance of the goods. [Id. at 9 (citing N.Y. U.C.C. Law § 2-608)]. The Court noted that, with respect to non-conformity of the goods, OmniMD would need to contend with a disclaimer in the MSL concerning the software's performance and that, with respect to services provided with the goods, OmniMD would need to address the MSL's limited service warranty. [Id. at 9–10]. The Court then discussed the required elements of a breach of contract claim for a services contract. [Id. at 10]. Applying New York law, which governs the MSL, [id. at 6 n.3], the Court instructed that OmniMD "must identify what provisions of the contract were breached as a result of the acts at issue," [id. at 10

(quoting Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011))].

      **C.**      **Breach of a Services Contract**

OmniMD's opposition brief suggests that it is proceeding on the theory (1) that the contact is a services contract and (2) that it is governed by Massachusetts law. See [ECF No. 15 at 6 (stating elements of breach of contract claim for services contract under Massachusetts law)]. As to the former, the Court has not yet made a finding as to the type of contract at issue but has noted that the MSL will likely be found to be a contract for the sale of goods. See [ECF No. 11 at 6 n.1]. As to the latter, the Court has already determined that the contract is governed by New York law. See [id. at 6. n.3 ("The MSL contains a valid choice of law provision that designates New York law for disputes arising out of the contract.")].

Despite the Court's specific instruction that a claim for a breach of contract under New York law "must identify what provisions of the contract were breached," [id. at 10 (citation omitted)], OmniMD contends that "Wired breached the entire MSL" because the product to be delivered was defective, [ECF No. 15 at 7], and the Amended Counterclaim Complaint pleads only that "Wired breached the [MSL]," [Am. Counterclaim Compl. ¶ 27]. At no point in the Amended Counterclaim Complaint does OmniMD identify a single provision of the MSL that was breached. See, e.g., [id. ¶¶ 18 ("Wired breached the MSL by failing to provide sufficient technical support"), 19 ("Wired failed and refused to cure defects and inadequacies in its [product] and breached its obligations under the MSL.")]. OmniMD's broad and conclusory claims that Wired "breached the entire MSL" are insufficient to state a claim for breach of a services contract under New York law and do not remedy the issues identified in the Court's Motion to Dismiss Order.

### D.     Breach of a Goods Contract

Even assuming that the MSL is a contract for goods, rather than services, the Amended Counterclaim Complaint also fails to state a claim for breach of a sales contract governed by the U.C.C. To maintain a breach of contract action based on an allegedly defective product, OmniMD must establish that any "non-conformity" of the product "substantially impair[ed]" its value and that OmniMD effectively revoked its acceptance of the goods. See N.Y. U.C.C. Law § 2-608. As the Court stated in its Motion to Dismiss Order, the MSL contains a limited warranty addressing the non-conformity of Wired's products: "**[WIRED] DOES NOT GUARANTEE THAT THE PROGRAMS WILL PERFORM ERROR-FREE OR UNINTERRUPTED OR THAT [WIRED] CAN CORRECT EACH AND EVERY ERROR**." [ECF No. 11 at 9; ECF No. 12 at 18]. The Court also noted that the MSL contains a limited service warranty, which provides that the warranty "is valid for a period of ninety days from performance of the applicable Services" and that "[OmniMD's] exclusive remedy and [Wired's] entire liability under these Services warranties shall be for [Wired] to re-perform any non-conforming portion of the Services within a reasonable period of time . . . ." [ECF No. 11 at 9–10; ECF No. 12 at 17–18].

OmniMD's Amended Counterclaim Complaint does not reference these provisions at all, despite the Court's specific guidance that "OmniMD would need to contend with" and "address" these provisions in an amended counterclaim. [ECF No. 11 at 9]. The Court's Motion to Dismiss Order specifically advised OmniMD that, "[w]ithout these essential allegations concerning nonconformity of the goods under the terms of the MSL, the claim fails." [Id. at 10]. Having failed to address these provisions of the MSL, OmniMD's Amended Counterclaim Complaint does not remedy the issues the Court identified in its Order.

## III.     CONCLUSION

Accordingly, Wired's motion to dismiss the Amended Counterclaim Complaint, [ECF No. 13], is <u>GRANTED</u>.

**SO ORDERED.**

May 27, 2020                                                           <u>/s/ Allison D. Burroughs</u>
                                                                                    ALLISON D. BURROUGHS
                                                                                    U.S. DISTRICT JUDGE